[Forsyth *v.* Dickson.]

## WESTERN DISTRICT, PITTSBURGH, 1853.

## Forsyth *versus* Dickson.

1. In an action against a sheriff for a false return on a *fi. fa.*, the measure of damages is *prima facie* the debt called for in the execution. He may show that other executions in his hands would have taken the proceeds of a sale, in mitigation of damages. Per LOWRIE, J.

2. A contract to build a steamboat according to specifications, and to deliver it completed at a place designated before a day certain, for which payments were to be made as the work progressed, vests no title in the vendee until after the completion and delivery of the boat. *By the District Court; approved by the Supreme Court.*

ERROR to the District Court of *Allegheny county.*

This was an action on the case brought by James A. Dickson & Co., against John Forsyth, late sheriff of the County of Allegheny, to recover damages for not levying, and for a false return of *nulla bona* to an execution placed in his hands, against Samuel Walker and James A. Eakin, at the suit of the plaintiffs.

The plaintiffs, on the 12th of June, 1848, recovered a judgment in this court, against Samuel Walker and James A. Eakin, for the sum of $1226.32. Upon this judgment an execution was issued to July Term, 1848, which was directed to the defendant, then sheriff, and was received by him on the 16th day of June, 1848. At the time the plaintiffs' execution came into the defendant's hands, there were other executions in his hands against Samuel Walker. Some of these were afterwards satisfied by the sale of Walker's personal property: the rest were returned *nulla bona.* The defendant, at or about the time the plaintiffs' execution went into his hands, was instructed by the attorney having charge of the writ, to levy on the steamboat Venezuela, in the possession of Walker, at Elizabethtown. Walker was building this boat for the Oronoco Steam Navigation Company, of New York, under a written agreement with J. M. Woodward, dated March 29, 1848, by which Walker stipulated, in consideration of the amount of $7500, payable in instalments, to wit: $1000 on the execution of the contract; $1000 when said boat is in frame; $1750 on delivery of said boat; and the balance in two equal payments, at four and six months, in satisfactory negotiable paper—to build and construct a steamboat, corresponding to certain specifications, and to deliver said boat to the said Woodward at the wharf in Pittsburg, below the bridge, prior to the 20th of June, 1848, free from all claims and liens, at his own proper cost and expense.

The boat was built, and delivered by Walker at the wharf, in

[Forsyth v. Dickson.]

Pittsburgh, on the 21st June, 1848. When the plaintiffs' attorney ascertained that the boat was coming through the first lock on her way from Elizabethtown to Pittsburgh, he proceeded to the sheriff's office, and having ascertained that no levy had been made, he again instructed the sheriff to make an immediate levy on the boat. The sheriff, however, did not make a levy. The reason which he afterwards assigned for not making the levy was, that Walker had paid him about $4000, to be distributed to the writs in his hands. The plaintiffs' execution was returned by the defendant on the 17th November, 1848, with this endorsement: "Levy made on personal property of James A. Eakin, sale made; proceeds, $19.92; applied to costs on this writ, $15.76. To debt and interest, $4.16—*nulla bona* as to residue."

On the trial of this cause before the late President Judge of this court, the defendant (subject to exceptions) gave in evidence sundry prior executions against Walker, which were in the hands of the sheriff at the time he received plaintiffs' writ, for an amount more than sufficient, as alleged, to cover the value of the boat, as proved on the trial, for the purpose of showing that if the sheriff had sold the boat the proceeds would have been applied to the prior executions, and not to the plaintiffs'; and that the plaintiffs, consequently, were not damnified by the neglect of the sheriff to levy on and sell the boat.

The defendant further offered in evidence the contract for building the boat, which was also received by the court, subject to exceptions. The facts stated in the offer were admitted to be true. The court, therefore, charged the jury in favor of the plaintiffs, upon both points, reserving the same, however, for the further consideration of the court in banc; and a verdict was rendered by the jury in favor of the plaintiffs, subject to the opinion of the court upon the points reserved.

OPINION OF THE COURT ON THE RESERVED POINTS.—"The fact that the defendant had in his hands, prior executions for an amount more than sufficient to cover the value of the steamboat Venezuela, as proved on the trial, furnishes no excuse or justification for his refusal to levy on and sell the boat upon plaintiffs' execution, as directed by their attorney. It is an attempt to escape the responsibility with which the law charges him, for a breach or omission of duty in one case, by showing that he has been guilty of a like breach of duty in several other cases; and an endeavor to evade the consequences of a false return to one execution, by proof of a like false return to several other executions, at the same time in his hands. But the law tolerates no such defence. It would be permitting the defendant, in a manner, to take advantage of his own wrongful conduct. Such a defence is contrary to the policy as well as the justice of the law, which requires of the officer, fidelity in the discharge of his duty, and

exacts its rigid performance. Besides, it is a defence which is in itself destitute of all merit.

The case is, then, narrowed down to the question of title. In whom was the title to the steamboat Venezuela at the time the plaintiffs' execution was received by the defendant? Was it in Samuel Walker, or J. M. Woodward? Had Walker any property in the steamboat, which could be seized under the plaintiffs' execution? To ascertain this, we must look at the contract between the parties, and to the evidence contained in defendant's offer.

The contract is executory. It is not a contract for the sale of a steamboat in existence, but an agreement to build and construct a steamboat, according to certain specification, and to deliver the boat, when thus built and constructed, at a place designated, prior to a certain day agreed on by the parties. The contract could only be satisfied by the delivery of the steamboat in a finished state, at the place designated; and until the boat was finished and delivered, it remained the property of the builder : if not, when did the title pass from him, and vest in the party with whom he contracted? It is said that the first instalment, of one thousand dollars, mentioned in the contract, was to be applied to the purchase of timber and other materials for the building of the vessel, and that it was applied accordingly. But did that vest the title to the timber and material purchased, in Woodward? If Walker was the agent of Woodward in the purchase of the timber and materials, then they belonged to Woodward, not otherwise. But it cannot be pretended that Walker, in making the purchases, was the agent of Woodward. The terms of the contract repel the idea that the relation of principal and agent subsisted between the parties. Nor can the timber and materials be considered as purchased with the money of Woodward, so as to vest in him the title. They were purchased with the money of Walker. It matters not that he had received it from Woodward. It was not paid by Woodward to Walker in consideration of the lumber and materials to be purchased, and Woodward would not have been bound to receive them; but it was paid by Woodward in part consideration of a steamboat to be thereafter built, finished and delivered by Walker, pursuant to the contract between the parties; and which, by the terms of the contract, Walker was to build, construct, and deliver, 'free from all claims and liens, and *at his own proper cost and expense.*'

The payment of the instalments of the consideration-money of this boat, according to the contract, or the advance thereof, could vest in Woodward no title to the boat previous to delivery. It would entitle him to demand of Walker the performance of the contract on his part, but would give him no title to the boat or to the material thereof, as the work progressed.

[Forsyth *v.* Dickson.]

The fact that Woodward furnished the model of the boat, can have no bearing on the question of title one way or the other. Walker undertook to build the boat in accordance with certain specifications. It matters not so far as it respects the question of title, who furnished the model and specifications; whether they were furnished by Woodward or Walker.

The employment by Woodward, at his own expense, of a naval architect, who superintended the boat, and occasionally worked on her from the commencement of the building until she was finished, as it was not intended, so in itself it was not sufficient to work a change of title. The employment of an architect was entirely gratuitous on the part of Woodward, and did not relieve Walker from any responsibility in the premises. It did not change the contract between the parties, or in any way modify its terms. Walker was still bound to finish and deliver the boat, pursuant to contract, 'at his own proper cost and expense.' It is not pretended that a new contract was made by the parties, and that the boat in its unfinished state was delivered to the architect as the agent of Woodward.

Another circumstance relied on by the defendant, as indicative of a change of title is, that at the time the contract was made with Walker, Woodward, with the privity of Walker, made a contract with James Nelson, of the city of Pittsburgh, for a low-pressure engine for said boat. It is not alleged that Nelson actually delivered the engine on board of the boat at Elizabethtown, and I presume that such is not the fact. But admit that he did; would the delivery of the engine for Woodward on board of the boat, draw to the engine the title of the boat, and vest it in Woodward without delivery by Walker?

But it is further insisted, that the title to the steamboat passed from Walker to Woodward before delivery at the wharf in this city, because Woodward, with the assent of Walker, and at his own expense, put on the boat an additional coat of light plank, and had her sheathed with sheathing paper, saturated with tar; and about three weeks before she was launched, with the consent of Walker, he put his painter to work on her. It will be observed that all these things were done with the consent of Walker, clearly implying that the boat was still in his possession, and subject to his control. And the principle here applies, that 'when the materials of another are united to materials of mine, by my labor, or by the labor of another, and mine are the principal materials, and those of the other only accessory, I acquire the right of property in the whole, by right of accession. This is considered as a general principle in the acquisition of property.' *Merrit* v. *Johnson*, 7 Johns. 473.

It is unnecessary to review the numerous cases cited by counsel on the argument. It is sufficient to refer to our own cases of

[Forsyth *v.* Dickson.]

*Pritchett* v. *Jones,* 4 Rawle, 260; *Clemens* v. *Davis,* 7 Barr, 263; and to the case of *Johnson* v. *Hunt,* 11 Wend. 135, for the principles which govern and control the decision of this case.

There is nothing in the conduct of the parties to the contract, from the date of its execution to the delivery of the steamboat at the wharf in this city, tending to show an intention on their part, in the meantime, to pass the title to the boat from the one to the other. There was no act done by either which could have this effect; and delivery was not dispensed with. It was certainly the understanding of both parties, that the contract could only be satisfied by actual delivery at the wharf in Pittsburgh. The delivery *was there made by Walker and received by Woodward,* and till then the title did not pass. The plaintiffs are therefore entitled to judgment in their favor, on the reserved points."

Judgment accordingly to be entered by the Prothonotary.

The entry of judgment in favor of the plaintiffs on the reserved question was the error complained of.

*Geo. P. Hamilton,* for plaintiff in error, referred to *Commonwealth* v. *Watmough,* 6 Wharton, 117; *Woods* v. *Russel,* 5 B. & Ald. 942; *Atkinson* v. *Bell,* 8 B. & C. 277; *Carothers* v. *Payne,* 5 Bing. 270; *Clarke* v. *Spence,* 4 Ad. & Ellis, 107; *Sumner* v. *Hamlett,* 17 Pick. 76; *Glover* v. *Hunter,* 7 Barr, 140; *Pritchett* v. *Jones,* 4 Rawle, 267; *Hutchinson* v. *Hunter,* 7 Barr, 140; 2 Kent's Com. 496.

*C. Shaler & Co.,* for defendant in error, referred to *Hopkins* v. *Forsyth,* 2 H. 38; *Irwin* v. *Workman,* 3 Watts, 357; *Chambers* v. *Miller,* 7 W. 63; *Jaggers* v. *Binnings,* 1 Stark. 63; *Pritchell* v. *Jones,* 4 R. 260; *McCullough* v. *Porter,* 4 W. & S. 177; *Schell* v. *Hayward,* 4 H. 522; *Clemens* v. *Davis,* 7 B. 263; *Mucklow* v. *Mangles,* 1 Taunt. 318; *Johnston* v. *Hunt,* 11 Wend. 137; *Werrell* v. *Johnson,* 7 Johns. 473; *Jenkins* v. *Eichelberger,* 4 W. 121; *Lehigh Co.* v. *Field,* 8 W. 241; *Rose* v. *Story,* 1 Barr, 190.

The opinion of the court was delivered October 12, 1853, by Lowrie, J.—This is an action against the sheriff for a false return of *nulla bona* to a *fi. fa.*; and as the question of property was rightly decided, the charge is sustained. But the sheriff gave evidence tending to show that a levy would have been fruitless to the plaintiff below, because there were prior executions in his hands that, after allowing for all payments, would have taken the whole proceeds. The substance of the subsequent ruling of the court was to exclude this evidence from the consideration of the jury, and thus the plaintiff had a verdict for the whole amount of his execution. This is error. For this breach of

[Bell *v.* Faber.]

duty the sheriff ought to suffer; but it is not right that the measure of justice should depend upon the chance of the amount of the execution, whether it be two or ten thousand dollars. He who is wronged by the act can claim no more than that the wrong be repaired. He has no claim for anything more than compensation, and for this principle the authorities are abundant: 9 Greenleaf, 28; 1 Fairfield, 20; 6 Mass. 242; Sedgwick on Dam. 528. And so we lately decided in the case of *The Commonwealth* v. *Contner*, 6 Harr. 439. *Prima facie* he is liable to the whole amount of the execution, and he must show very clearly the facts that reduce his liability and measure that reduction: 9 Johns. 305; 1 Hill, 275, 276, 550. But the neglect of duty by the sheriff is plain, and all the cases show, that in an action not against himself and his sureties on the recognizance, but against himself alone, he is liable for at least nominal damages, and we might so have entered the judgment here, if it had been admitted that, on these principles, no more could be recovered. But it is not, and we treat the case as an improper rejection of evidence. We wish that, when points are reserved, they should be so clearly stated that we can know what they are, and what judgment is to be rendered in their solution.

Judgment reversed, and a new trial awarded.