## E. Keeler Company v. Emil Schott, Appellant.

*Practice, C. P.—Trial—Instruction to jury—Answers to theoretical points.*

It is the duty of a judge to instruct a jury upon every question of law involved in a case trying; but it is not his duty to answer points that raise questions in thesi merely, or that rest upon the assumption of a fact of which there is no such evidence as to justify a jury in finding it.

In an action on an alleged parol contract where a letter is given in evidence which, while it might be evidence of an antecedent contract, is not identified as the basis of an original contract, it is error to affirm a point which is open to the merely theoretical assumption that the work, etc., sued for might have been completed subsequent and consequent to sending and receipt of such letter.

*Evidence—Rejection of offer partially inadmissible.*

Where an offer is made to prove certain facts some of which are admissible in evidence while others are inadmissible, the offer is incompetent as a whole; and the court is not bound to separate the offer and admit the competent portion of it, although it may do so in its discretion.

*Evidence—Relevancy of as to any fact in issue.*

Evidence tending to prove the existence or nonexistence of any fact in issue is relevant.

Suit being brought to recover damages for breach of contract to permit plaintiff to construct a steam heating plant in defendant's house, and it was alleged by plaintff that a boiler was specially made so as to be practically worthless for any other place or purpose, evidence is admissible tending to show that the article which was the subject of the alleged contract was an ordinary article of merchandise and had a marketable value. The disputed fact was undoubtedly a fact in issue.

*Contract for manufactured goods—When title passes.*

Where an agreement is for the sale of goods to be manufactured the same rule applies as in the case of unspecified chattels; the contract is executory and the title does not pass until the manufacture is completed and made ready for delivery.

*Contract—Measure of damages—Market value—Executory contract.*

In the case of an executory contract of sale of goods not specific the rule undoubtedly is that the measure of damages for refusal to receive is the difference between the price agreed upon and the market value on the day appointed for delivery.

It does not follow because an article to be manufactured under a contract may be a marketable article that no damages can be allowed for a refusal to receive the same; such a condition will not preclude recovery of damages beyond the profits that would have been made on the entire contract, unless the value of the article in the condition it was, when repudiated, was equal to the cost of labor and materials that went into it.

Argued March 10, 1896.   Appeal, No. 1, March T., 1896, by defendant, from judgment of C. P. Juniata Co., Feb. T., 1895, No. 59, on verdict for plaintiff.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit for alleged breach of parol contract.

By the statement and bill of particulars a breach was alleged of a parol contract made on September 10, 1894, whereby the plaintiffs agreed to provide materials and construct and put up in defendant's hotel a heating apparatus, to consist of a furnace, steel boiler, steam pipe and fittings and radiators for which defendant agreed to pay $900.

The verdict was in favor of the plaintiff for the sum of $272.39.

The facts sufficiently appear from the opinion of the Superior Court.

*Errors assigned* were :

(1) In answering plaintiff's second point: That even if Schott did mean to write "please get the specifications started as soon as possible" to these plaintiffs, but did in fact write, "please get the plant started as soon as possible," and the plaintiff acted upon the letter as it was sent by said Schott and received by them, and they prepared and made the boiler in question and got the other material ready to place in the "Jacob's House" in consequence of what Schott wrote them as above stated, he is liable to them for the price of the boiler and damages for his refusal to accept the plant as contracted for. *Answer.* This we affirm.   The plaintiff had a right to interpret

the language used by Mr. Schott in his letter in accordance with the ordinary and usual meaning of the words employed, and even if Mr. Schott did not use words which conveyed the meaning he intended them to convey he is bound by the language used, as that is the only way they had a right to interpret his meaning.

(2) Error in the rejection of the testimony offered by defendant as follows : Defendant's counsel proposes to prove by the witness on the stand that he is an experienced person in steam fitting ; that he has fitted up steam plants of all kinds in hotels, churches, courthouses and other buildings such as dwellings.   That the tubular boiler is a common form of boiler, and in all good manufactories is stock upon the market.   That from a single manufacturer we will be able to obtain now as high as twenty to thirty manufactured in stock.

Also proposes to show what would be the fair market value of steam boilers, such as this, and the cost of putting in a steam plant under similar conditions to the one placed in the " Jacob's House."

This for the purpose of showing that the tubular boiler that is the subject of controversy is a marketable thing and for the purpose of fixing damages, if a contract existed.

Plaintiff's counsel object, because it is immaterial and irrelevant.   It is not proposed to show that tubular boilers of the capacity of this one are kept on the market regularly ; nor boilers constructed as this one is shown to have been constructed, and that in estimating the cost of a plant the estimate must be made from actual observation and knowledge of this particular plant, or similar plants, and may not rest on the speculative opinion of the witness.

The Court : Unless you can show that it was a boiler such as the plaintiff contends or contended for, the evidence will be rejected.

Mr. Neely : We propose to show that it was just that kind of a boiler.

The Court: If you say that it was a tubular boiler constructed as this one was, and that it can be bought and sold on the market, then we will admit the evidence.

Dr. Atkinson : I believe that my objection that the evidence is immaterial and irrelevant is a good one.

By the Court: Objections sustained and evidence rejected. To which the defendant excepts and bill sealed.

(3) In rejecting offer by defendant to prove by the witness on the stand that he is an experienced man in the steam heating business; that he has put in upwards of four hundred steam plants in hotels, churches, schools and other public buildings and private dwellings; that he has been engaged in business for about seven years; that he knows the character of the tubular boilers and handles them in his business. That tubular boilers of the same size, dimensions and make as the present boiler in controversy are kept in stock by a large number of manufacturers of steam heating apparatus. That the boiler which is testified to in the present case has a marketable value and is bought and sold as merchandise.

(4) In answering defendant's first point. Said point and answer are as follows: If the jury believe from the evidence that the boiler testified to by the plaintiff's witnesses was a marketable boiler no damages can be allowed for it. *Answer:* Refused.

(5) In answering defendant's second point. Said point and answer are as follows: If the jury believe from the evidence that the plaintiffs could have protected themselves from damages at a trifling expense or by reasonable exertion, they were bound so to do before they could recover from the defendant, even if a contract had been made. *Answer:* Refused as inapplicable to the facts in this case.

*J. Howard Neely* and *J. N. Keller*, for appellant.

*F. M. Pennell* and *L. E. Atkinson*, for appellee.

OPINION BY RICE, P. J., April 13, 1896:

The plaintiffs' cause of action, as set forth in their statement and bill of particulars, was the breach of a parol contract made on September 10, 1894, whereby the plaintiffs agreed to provide materials, and construct and put up in the defendant's hotel a heating apparatus to consist of a furnace, steel boiler, steam pipes and fittings and radiators, for which the defendant agreed to pay $900. They allege that they at once entered upon the work, and that the boiler was nearly completed and ready

for shipment, when the defendant discharged them from any further performance and declared " the job off." They claimed to recover the profits they would have made if they had been . permitted to carry out the contract, and the cost of the labor and materials expended in the construction of the boiler. The defendant admits that there were negotiations between him and the plaintiffs on September 10, but denies that there was a contract. He alleges that it was then stated that nothing was to be considered a contract until reduced to writing and signed by both parties, and that the plaintiffs' representative agreed to send catalogues showing the different styles of radiators, and a contract with specifications, which he should examine, and, if satisfactory, sign. The main question of fact, on the trial, was whether an oral contract was made on September 10, and upon this question there was a conflict of testimony. The trial resulted in a verdict and judgment in favor of the plaintiffs for an amount which indicates that both branches of their claim were allowed. We shall take up the assignments of error in their order.

1. The defendant's letter of September 20 was offered for a specific purpose, namely: to show that the defendant recognized the existence of a contract between him and the plaintiffs. Taken in connection with the letter to which it was a reply it was very strong corroborative evidence of the plaintiffs' allegation ; and the defendant's attempt to explain away its language was extremely weak. The court would have been justified in commenting, with emphasis, upon the letter as evidence of the alleged contract. Nevertheless, the questions, whether the parties had entered into a contract, and what were its terms, were for the jury and were to be decided upon a fair view of all the evidence, and not the letter alone. In his general charge and in his answer to the plaintiffs' first point, the learned judge submitted these questions to the jury. But the plaintiffs' second point was so worded as to permit the jury to find that the plaintiffs, acting on the faith of the letter, prepared and made the boiler, and might, therefore, be entitled to recover its price, although there was no prior contract. If it does not mean that, it was purposeless. But the plaintiffs' evidence was to the effect that the work was begun immediately after the conclusion of the negotiations on September 10,

and that the boiler was nearly completed when the defendant's letters were received. The plaintiffs' counsel, appreciating the force of this objection to the point, makes an ingenious and plausible argument to show that the number of men employed might have done the work between September 20, and September 25, when the order was countermanded. True, the work might have been done in that period, but we have looked through the record in vain for any affirmative evidence that it was done. The fact was susceptible of clear and unequivocal proof. It was peculiarly within the knowledge of the plaintiffs, and upon the theory which they asked the jury to consider the burden of proof was upon them. But if it were clear that the jury found that the plant was contracted for on September 10, it would be immaterial whether the boiler was constructed before or after the letter. Is it clear that the jury so found? The substance of the point is, that if the plaintiffs acted on the letter then they would be entitled to recover, not only the price of the boiler, but damages for the defendant's refusal to accept the plant " as contracted for." How contracted for; on September 10, or by the letter? The point is ambiguous. The court had instructed the jury as to the obligations created by the contract of September 10. The point seems to present a second theory upon which the plaintiffs might possibly recover. The counsel may not have so intended, but the point seems to convey the impression that if the plaintiffs acted on the letter a liability on the part of the defendant would be created, which might not otherwise arise; in other words, that the letter acted on would, of itself, create a contract by which the defendant would be bound.

The same idea was conveyed in the general charge, when the learned judge says : " the plaintiffs had a right to understand it according to the usual and ordinary meaning of the words used, and if they acted upon that meaning then it would bind Mr. Schott whether he used the words he wanted or intended to use or not." But for what would it bind him? Clearly, if not acted on, it would not, of itself, bind him to pay the price that had been discussed in the negotiations of September 10, if no contract was made then; and if, as the plaintiffs alleged, a contract was made then, the letter added nothing to its binding force. The letter alone did not make a contract for the breach

of which the plaintiffs could recover damages, and in the absence of affirmative evidence that the plaintiffs acted on the letter it was error to permit the jury to find that they did, and that a liability on the part of the defendant was thereby created. "It is the duty of a judge," said Mr. Justice WILLIAMS, "to instruct the jury upon every question of law involved in a case trying; but it is not his duty to answer points that raise questions in thesi merely, or that rest upon the assumption of a fact of which there is no such evidence as to justify the jury in finding it:" Heffner v. Chambers, 121 Pa. 84. As we have said, the letter was very strong evidence of the existence of the contract alleged in the declaration. Under the testimony the attention of the jury should have been confined strictly to the issue thus raised. If, failing to prove the contract alleged in the pleadings, the plaintiffs were to be permitted to shift their ground and recover for work done, or upon the ground of work done, pursuant to the order contained in the letter, it was within their power, and incumbent on them to show that the work was done after the letter was received. Then they might reasonably ask a jury to find that it was done "in consequence of what Schott wrote them," but not otherwise. For these reasons we are of opinion that the affirmance of the plaintiffs' second point was error, and we cannot say that it was harmless. The first assignment is sustained.

2. Where an offer is made to prove certain facts, some of which are admissible in evidence, while others are inadmissible, the offer is incompetent as a whole; and the court is not bound to separate the offer and admit the competent portion of it, although it may do so in its discretion: Smith v. Arsenal Bank, 104 Pa. 518. The offer embraced in the second assignment was not, as a whole, competent; therefore the court committed no error in rejecting it. Evidence of the cost of a steam plant similar to the one placed in defendant's house was wholly irrelevant unless coupled with an offer to show that the plant was similar to the one alleged to have been contracted for. We suppose that it would be proper to show by any competent testimony what would be the actual cost of such a plant as that contracted for. Such evidence would be relevant to the question of damages consequent upon a breach of contract where the measure is loss of profits. But as the defendant's offer reads, that is not what he proposed to prove.

This assignment is overruled.

3. The defendant offered to show that tubular boilers of the same size, dimensions and make as the boilers in controversy are kept in stock by a large number of manufacturers of steam heating apparatus, and " that the boiler which is testified to in the present case has a marketable value and is bought and sold as merchandise." The objection that the evidence was immaterial and irrelevant was sustained. Evidence tending to prove the existence or nonexistence of any fact in issue is relevant. Was not the fact that the boiler was an ordinary article of merchandise and had a marketable value a fact in issue? Judging from the plaintiffs' bill of particulars and their evidence in support of it, it was. They alleged and gave evidence tending to show that the boiler was made for a special place and purpose and was practically worthless to them for any other purpose or for any other place except one exactly like that for which it was constructed. Say the counsel: " The boiler for this steam plant was not in existence at time of making contract, was made for this particular hotel upon order, was adapted to the radiation of this building, and is of no value to plaintiff, unless it may in the course of a long stretch of time happen to secure a contract for heating a building of similiar size," etc. But the relevancy of the defendant's offer is not to be determined by assuming the truth of all that the plaintiffs alleged and proved. The evidence offered would have a tendency to disprove some of the plaintiffs' allegations and to rebut some of the inferences which are drawn therefrom. By reason of its rejection the case went to the jury upon evidence, which, standing uncontradicted, would clearly entitle the plaintiffs to recover the full value of the labor and material they had expended in the construction of the boiler. Even if it be granted that it was unnecessary for the plaintiffs to aver and prove what they did in this regard, still it might be argued with much force that they put the fact in issue by their pleadings and proofs. See R. R. Co. v. Broadnax, 109 Pa. 432, 442, and cases cited. We are of opinion, however, that the evidence was admissible upon broader grounds. The learned judge charged the jury that if there was a contract, and if the plaintiffs prepared the boiler for this particular place and for this job, then they would be entitled to recover the value of it in addition to

the profits they would have made on the whole contract. By value we suppose the court meant the cost of the labor and materials, for there was no other evidence of its value. The result was to give the plaintiffs the cost of the labor and materials which went into the boiler, notwithstanding the fact that it is an article of merchandise which may be bought and sold in the market, and may be worth in the market all that was expended upon it. In determining the relevancy of the testimony we must assume the truth of all the facts embraced in the offer. It is manifest, therefore, that the defendant was harmed by the ruling, unless, as matter of law the court would have been justified in holding that the title to the boiler had passed to the defendant when the order was countermanded. If the title had not passed, the plaintiffs were entitled to recover only such damages as they sustained by the breach of the contract, and, as they still own the boiler they have received compensation to the extent of its value. If, supposing that the title had not passed, the fair market value of the boiler in the condition it then was was equal to the cost of the labor and materials, the plaintiffs would be compensated by the profits they would have made on the entire contract, and that would be the measure of damages. But if its value, in the condition that it was, was less than the cost of the labor and materials, it would seem that they would justly be entitled to recover the difference in addition to the profits. It is necessary, then, to decide whether the title to the boiler had passed to the defendant. Whether the contract be regarded as a contract for work and labor merely, or as a contract for the sale and purchase of a thing to be manufactured, or as partaking of the nature of both, it was executory.

The plaintiffs could not have alleged performance and maintained an action for the contract price, but had a right to treat the letter of September 25th as a refusal to permit them to complete the contract, and to sue at once for a breach. It is to be noticed also that the contract was entire. If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by the law, such contract will generally be held to be severable. But, if the consideration to be paid is single and entire, the contract

must be held to be entire, although the subject thereof consist of several distinct and wholly independent items : Fullmer v. Poust, 155 Pa. 275. Nor, even if it was severable, was it an executed contract, so far as the boiler was concerned. The general principle is that a chattel ordered to be manufactured continues the property of the manufacturer until completed and delivered or tendered: 1 Benj. on Sales (Corbin's ed.), § 536; Forsyth v. Dickson, 1 Gr. 26; Pritchett v. Jones, 4 R. 260–267; Clemens v. Davis, 7 Pa. 263 ; Swift v. Morrison, 2 W. N. C. 699. " That the bargain is by words in past or present time is not conclusive evidence of a perfect sale; for if it appear in the contract or ab extra that the vendor did not own the article contracted for, or that it was not then in existence, or not yet manufactured or not selected out of a lot of similar articles, then the subject-matter of the contract remains undefined and unspecified, at least to some degree, and it is incompatible with the very nature of things to call it a perfect sale:" Winslow, Lanier & Co. v. Leonard, 24 Pa. 14. In the case of an executory contract of sale of goods not specific, the rule undoubtedly is that the measure of damages for refusal to receive the goods is the difference between the price agreed upon and the market value on the day appointed for delivery. Unexcelled Fire-Works Co. v. Polites, 130 Pa. 536. Where an agreement is for the sale of goods to be manufactured the same rule applies as in the case of the sale of unspecified chattels. The contract is executory and the title does not pass until the manufacture is completed and made ready for delivery. A large number of cases in support of this proposition will be found collected in 21 Am. & Eng. Ency. of Law, 502. It is held, however, that the rule is one of presumption merely and may be rebutted by evidence of the intention of the parties: 1 Benj. on Sales (Corbin's ed.), 324; Winslow v. Lanier, supra; Clemens v. Davis, supra. Assuming the truth of the facts alleged in the defendant's offer there was no evidence from which it is necessarily to be inferred that the parties intended the title to pass before the appropriation of the boiler to the purpose for which it was manufactured. The contract could only be satisfied by such appropriation, and in the mean time the boiler was as completely owned by the plaintiffs as were the materials of which it was constructed.

They might have sold it, or appropriated it to any other use without subjecting themselves to liability to the defendant. If it had been destroyed the loss would have been theirs, and it might have been seized on execution for their debts. We do not think this conclusion is in conflict with what was decided in Ballentine v. Robinson, 46 Pa. 177. That decision was put upon the ground that the right of property was clearly in the defendants on notice of the completion of the article. " The just rule, therefore," said STRONG, J., "plainly is, in such a case, where the manufacturer of an article ordered has completed it and given notice of its completion, that he should be allowed to sue for the value and recover, as its measure, the contract price. " The rule thus enunciated is applicable to a completed article, ready for delivery, where nothing remains to be done but to transfer the possession, and does not apply to a case like the present where the contract is entire and is wholly executory.

But it is argued that the materials of which the boiler was composed were delivered when they were put into it, therefore (if we correctly understand the argument of counsel), the title had passed to the defendant and the measure of damages would not be affected by the evidence offered. This argument is based on what we think is an erroneous application of a single expression of Judge STRONG in the case cited. Taken away from its connection it is made to serve as a general rule which would govern not only where the thing manufactured is of special and peculiar design which would be of little or no value except to the person or for the purpose for which it was manufactured—like a tombstone, a pair of shoes, a portrait or the like—but also where it is the most common article of merchandise. We do not think the court intended to establish such a rule, or that it could be practically followed without the most inconvenient results. In the case of a contract to build a house, is there a delivery of the logs when they are cut in the woods, of the boards when they are sawed at the mill, or of the doors and sash of a standard size when they are manufactured at the shop? Where the article is manufactured according to a special design or pattern, for a special and particular use, is not readily marketable, and would be of comparatively little or no value to any one else or for any other use, it might possibly

be held, for the purpose of working out substantial justice, that there is an appropriation of the materials to the contract when they are put into the article, and, therefore, there is such delivery as would pass the title as the work progressed. We do not understand that more than that was intended to be decided in Ballentine v. Robinson, when Judge STRONG said: "The materials of which it was composed may fairly be said to have been delivered when they were put into the engine." This remark had reference to a completed article, concerning which, later on, the eminent judge said: "Besides, it may well be that the article manufactured according to order may have no marketable value, and would be worthless in the manufacturer's hands. This engine was not made for sale in the market. It was built according to instructions given by the defendants, and it may be presumed for their particular use." Cases of the class to which Ballentine v. Robinson; Bement v. Smith, 15 Wend. 493; Shawhan v. Van Nest, 25 Ohio, 490 belong, are recognized as exceptions to the general rule which is applied in the sale of ordinary goods or merchandise which are of standard size and quality and have a fixed market value. These cases and others are elaborately reviewed in Gordon v. Norris, 49 N. H. 376, and Allen v. Jarvis, 20 Ct. 38. In Hosmer v. Wilson, 7 Mich. 294; 74 Am. Dec. 716—a leading case which has frequently been cited with approval—there was an agreement to construct an engine for an agreed price. Work was done and some materials used towards its construction, but before completion the order was countermanded. The manufacturer brought suit to recover damages. It was held—First, that he could not recover on the common counts the value of such labor and materials, but should sue on the special contract, claiming damages for the breach of it: Second, that the law will not compel the seller after such countermand to go on and complete the article before he can recover for what he has already done. He has no right to so increase his damages, but he may treat the countermand and refusal as a prevention of performance, and sue on that ground. Third, that the value of the labor spent on the materials in such case is not the proper criterion of damages. Such labor may have enhanced the value of the materials, in which case, the plaintiff, still owning them, is compensated to the extent of such enhanced value; or

it may have diminished such value, then payment for the labor will not be an adequate compensation. Whether the labor has enhanced or diminished the value of the materials, and the exact amount of the damages, are necessarily questions of fact for the jury. These conclusions commend themselves, and they do not seem to us to be in conflict with anything that was decided in Ballentine v. Robinson.

The offer here was to show that there was nothing exceptional or peculiar about this boiler, and that it was readily marketable. Possibly the evidence might not come up to the offer, and possibly, after the evidence was all in, it might fail to show that the boiler, in its present condition, had marketable value; but the offer had a legitimate tendency in that direction, and for that reason, as well as because the plaintiffs opened the door by their pleadings and proofs, it should have been admitted. The third assignment is sustained.

4. The fourth and fifth assignments are overruled. The fact that the boiler was marketable is relevant to the issue, and the defendant was entitled to prove it as preliminary to proof of what its value was. But it would not of itself preclude recovery of damages beyond the profits that would have been made on the entire contract unless its value, in the condition it then was, was equal to the cost of the labor and materials that went into it.

Judgment reversed and venire facias de novo awarded.