## Myers *versus* The Girard Insurance Company.

In every insurance upon a vessel, there is an implied warranty upon the part of the assured, that at the time of sailing, the vessel shall be seaworthy for the voyage insured.

This principle as applied to steam vessels requires, not only that the hull shall be staunch, tight, and strong, but that the machinery shall be properly constructed, and of sufficient power to perform the contemplated voyage.

If a ship, in a short time after leaving port, becomes leaky and founders, or is obliged to return without any visible or adequate cause, the presumption is that she was not seaworthy when she sailed.

In such cases the *onus probandi* is thrown upon the assured to show that the inability arose from causes subsequent to the commencement of the voyage.

A waiver of seaworthiness, when not expressed in the contract of insurance, is only to be inferred upon clear evidence that the insurer knew the vessel was unfit to perform the voyage insured, or that a full representation of the defects of the ship was made by the assured before the completion of the contract.

The fact of seaworthiness is for the jury, and the presumption is in its favour, and the onus upon the party denying it; but this may be shifted by the inability of the vessel to perform the voyage without any accident or adequate cause to account for the failure.

Upon a motion for a nonsuit the court is not bound to give specific answers to points propounded—the granting of the nonsuit is a sufficient answer.

ERROR to the District Court of *Philadelphia*.

This was an action on a policy of insurance, at the suit of Lewis B. Myers against The Girard Fire and Marine Insurance Company. The insurance was in the sum of $5000, on the iron hull stern wheel steamboat "Governor Moorhead," for one trip from Philadelphia to Port Washington, in North Carolina. The boat was new, and had been built in the city of Philadelphia, for the plaintiff, by contract, to run on Tar river, North Carolina, as a passenger and mail boat. The insurance was effected on the 18th July, 1853, and on the 23d of the same month the boat left Philadelphia, and proceeded down the Delaware river to Reed Island. Her steam got down, and she went very slow, her furnace refusing to draw. After going up Morris river to Leedsburg, and making an effort to get the machinery to working properly, without effect, the captain and pilot returned with her to Philadelphia on the 26th of July, 1853, and while at her berth at the wharf, during the same night, she sunk, sustaining considerable damage. She was raised, some repairs and alterations made upon her, and made another unsuccessful effort, in which however she sustained no damage of consequence. On the third trial, by the use of great skill and care, she was brought to her port of destination.

The witnesses who were examined on the subject, all testified that the boat was not built for ocean navigation. That she was adapted to river navigation, but not for the sea. The boat suffered no accident while going down the river, nor was there any stress of weather. The witnesses were of opinion that she could with

[Myers v. The Girard Insurance Company.]

care in favourable weather be taken from Philadelphia to Port Washington.

A witness, who was an agent for another company, and which also gave a policy on the boat, stated that he had examined the boat, and had communicated to the secretary of the corporation, defendant, before the insurance was effected, what kind of a boat the one in question was, and the trade she was designed for.

After hearing the plaintiff's evidence, the court below (STROUD, J.), under the Act of the 11th of March, 1836, relating to the District Court, nonsuited the plaintiff, upon the ground that the testimony of the witnesses and the circumstances of the case showed that the boat was *unseaworthy*, and therefore the policy was void.

The plaintiff presented certain points to the court, and prayed their answers upon the same, which the court refused, upon the ground that the directing of the nonsuit covered the whole cause.

The plaintiff moved the court in banc to take off the nonsuit, which was refused, and the plaintiff sued out this writ of error.

And assigned for error—

The judge below erred in refusing to answer plaintiff's points specifically.

In refusing to answer them affirmatively. That the question of seaworthiness is peculiarly for the jury: in refusing to submit that to them. In not submitting the question of the waiver of seaworthiness: in withdrawing the case from the jury, and ordering a nonsuit.

*Balch* and *G. M. Wharton*, for plaintiff in error.

*Sheppard*, for defendant in error.

The opinion of the court was delivered by

KNOX, J.—There is no principle of marine insurance better settled than the one which declares that in every insurance upon a vessel there is an implied warranty upon the part of the assured that at the time of sailing the vessel shall be seaworthy for the voyage insured. This implied warranty is not confined to the sufficiency of the hull, but in a sailing vessel extends to the soundness of the sails and rigging: Weddenham and Others v. Bell, 1 *Camp.* 1; and as was said by Lord ELDON, in the House of Lords, in the case of Wilkie v. Geddes, 3 *Dow.* 57, "the ship must be furnished with ground tackling sufficient to encounter the ordinary perils of the sea, and that when the anchors were defective the ship was not seaworthy." This principle, in its application to steam vessels, requires not only that the hull should be tight, staunch, and strong, but that the machinery should be properly constructed, and of sufficient power to perform the voyage insured.

[Myers *v.* The Girard Insurance Company.]

There is another principle applicable to the case under consideration, and it is this. If a ship, in a short time after leaving port, becomes leaky and founders, or is obliged to return without any storm, or visible or adequate cause to produce such an effect, the presumption is that she was not "seaworthy" when she sailed, and the *onus probandi* in such a case is thrown upon the assured to show that the inability arose from causes subsequent to the commencement of the voyage and attaching of the risk : *Hilyard on Marine Insurance,* 106. " A ship is always presumed to have been defective when she sailed, unless her disability be proved to have been occasioned by the perils of the voyage :" *Marsh,* b. 1, chap. 1181. " The fitness of the above principle," said Chief Justice GIBSON, in Fleming *v.* The Marine Insurance Company, 3 *W. & Ser.* 152, " in its application to the circumstances of the case which gave rise to it has been doubted, but it seems not to have been doubted that when a ship which has not been disabled in her voyage by an accident or stress of weather is found unable to reach her place of destination, there is a presumption that she was unseaworthy when she sailed, which it is incumbent on the assured to disprove."

In the case before us the plaintiff's action was brought to enforce a contract of insurance of five thousand dollars on the iron hull stern-wheel steamboat, Governor Moorhead, for one trip from Philadelphia to Port Washington, North Carolina. The vessel was built in Philadelphia, and was intended to be used in running on Tar river, in North Carolina. The insurance was made on the 18th July, 1853, and on the 23d of the same month the vessel started for her point of destination, to go altogether by steam, as she had no sails. The day was pleasant, but after proceeding apparently very well for some distance down the bay, it was found that the furnace would not draw, and that it was impossible to make sufficient steam to continue the trip. The boat was brought back to Philadelphia, and on the night of her return she sunk, which was the cause of the principal injury complained of in this action. After being raised and repaired, a second unsuccessful effort was made to take the boat to Washington. The third effort succeeded.

Unseaworthiness was the ground of defence. The learned judge of the District Court, before whom the cause was tried, was of opinion that the plaintiff's evidence would not authorize a recovery, and, upon application of the defendant, nonsuited the plaintiff. The plaintiff in error contends that the implied warranty of seaworthiness was waived by the insurance company, and that even if it were not, it was a question of fact for the jury to determine whether the boat was seaworthy or not.

We see no evidence from which an inference could be drawn that the insurance was to stand good without reference to the

[Myers v. The Girard Insurance Company.]

ability of the steamboat to make the trip. It may be conceded that the insurance company knew that the boat was built for the river trade, and that it had been examined by the agent of the company before the insurance; but a waiver of the implied covenants of seaworthiness for the particular voyage insured, does not follow from either of these circumstances, or both combined. All the authorities establish that a waiver of seaworthiness, when not expressed in the contract of insurance, is only to be inferred upon clear evidence that the insurer knew that the vessel was unfit to perform the voyage insured, or that a full representation was made by the assured of the defects of the ship before the completion of the contract. The assured is not bound to make any representation as to the condition of the vessel at the inception of the risk, for this is cured by the implied warranty of seaworthiness; but if he wishes to avoid the implied warranty by a disclosure of the defects, he must take care that the disclosure is full and complete. A mere statement that a vessel is intended for a particular trade, although that trade may be less hazardous than the voyage insured, will not cast the risk of seaworthiness upon the insurer, nor does it follow from an examination, that defects in the machinery of a steamboat were discovered and considered in the contract of insurance.

Seaworthiness is a question of fact, to be determined by a jury. The presumption is in favour of the seaworthiness of the vessel, and the burden of proof is upon the party alleging the absence of it. This presumption, however, may be rebutted, and the *onus probandi* shifted by satisfactory evidence that the vessel is unable to make the voyage, where such inability does not arise from the character of the weather or from any known cause sufficient to account for the failure, other than the condition of the vessel at the time when the voyage was attempted.

Now, to repeat the language of the learned judge of the District Court, " the undisputed evidence in the cause was that, without encountering the slightest storm in a single day's run, in perfectly fair weather, and on the comparatively smooth current of the Delaware river, the boat, which had no sails and was to be propelled solely by steam, was, from the imperfection of her works, unable to make steam, and was from this cause compelled to return to the port from which she had set out." This evidence was a part of the plaintiff's case, and from it the presumption arose that the vessel was unseaworthy when the voyage commenced; and as there was no evidence given to remove this presumption, it was clearly the duty of the court to nonsuit the plaintiff. A demurrer to the plaintiff's evidence would have been fatal to his recovery, and wherever the defendant can safely demur to the plaintiff's evidence, it is the duty of a court having the authority, upon application to order a nonsuit.

[Myers *v.* The Girard Insurance Company.]

The exception to the ruling of the court in not permitting the plaintiff's counsel to ask John P. Levy what the object of a certain person was in visiting the boat before she sailed, was not insisted upon in the argument, and would not have availed the plaintiff if it had been. Upon a motion for a nonsuit, the court is not bound to give specific answers to points propounded by counsel. Granting the nonsuit is a sufficient answer.

Judgment affirmed.