### CARD *v.* HINES.

*(District Court, D. South Carolina.   June 19, 1888.)*

1. ADMIRALTY—PARTIES—NON-JOINDER.
    Where, on libel in admiralty against respondent as sole owner of the steamship, it appears that he is only owner of 18-64ths, and that other persons own 46-64ths thereof, the libel will be dismissed.
2. SAME—JUDGMENT ON DEMURRER NO BAR TO PLEA.
    Where a libel in admiralty for breach of charter-party alleges that respondent is the sole owner of the steam-ship, and the charter-party filed therewith is made by certain agents of the owners, a judgment on demurrer that the libel is not defective for the apparent variance, does not preclude respondent from showing by plea the fact that there are other owners, and, as such, necessary parties.
3. SAME—CERTIFICATE OF REGISTRY—ESTOPPEL.
    Nor is the respondent precluded from showing in defense that there are other owners of certain shares therein, by the fact that the certificate of registry, dated April 20, 1879, delivered by the master for entry into the custom-house, showed that respondent was sole owner; such certificate not being a document of title, and respondent not intending thereby to mislead libelant.

In Admiralty.   Libel for breach of charter-party.

*J. N. Nathans,* for libelant.

*J. P. K. Bryan,* for respondent.

SIMONTON, J. This libel was filed for breach of charter-party against the respondent, who is alleged in the libel to be the sole owner of the British steam-ship West Cumberland. The charter-party attached to the libel as an exhibit was made at New York, 5th November, 1887, between the libelant and Simpson, Spencer & Young, agents of the owners of the steam-ship West Cumberland. The respondent demurred to the libel upon the ground that the libel was against the respondent as sole owner of the steam-ship, and the charter stated that Simpson, Spencer & Young were agents for the owners, thus showing on its face that others besides respondents were owners, and so necessary parties. The demurrer was overruled. As it admitted the allegation of the libel, the supposed variance between the exhibit and the articulations of the libel did not warrant the conclusion sought to be drawn therefrom. The respondent then pleaded in abatement that he was the owner of 18-64ths of the steam-ship, holding these shares for his firm of Hines & Bro., and that certain other persons, unknown to the proctors of respondent, owned the remaining shares of the steam-ship. The libelant joined issue on this plea, denying the ownership of any other party than respondent, and averring that he was the sole owner, as charged in the libel. The case comes up upon the plea and issue thus made.

At the hearing the libelant interposed two preliminary objections to hearing on the plea: That the decision on the demurrer was *res judicata,* and the discussion cannot be renewed; second, that the plea in abatement is bad, in that it does not disclose the names of the alleged co-owners. The ruling on the demurrer went simply to this extent: that upon the face of the pleadings it did not appear to the satisfaction of the court that respondent was not sole owner of the ship. The libel articulately propounded that fact. The demurrer *pro hac* admitted this allegation. The apparent variance in the exhibit did not cure the admission. The plea now alleges as a fact that there are other owners. A different question is presented. This exception is not well taken. With regard to the form of the plea, there can be no doubt that when one pleads the non-joinder of defendants in abatement, especially if these are co-owners with him, he pleads a fact peculiarly within his knowledge or within his reach. To avail himself of the objection he must state who the others are, so that in a new suit the plaintiff may be advised. In the language of the common-law pleading, he must give the plaintiff a better writ. 1 Chit. Pl. 446. Were this not so, we might have an endless succession of pleas in abatement. This rule of pleading, founded upon fixed principles, has force in every jurisdiction. The plea, then, in the case at bar, was not good. But the libelant, not excepting to the form, or to the sufficiency of the plea, joined issue thereon. Technically and logically the only question in the case on this issue is the single fact put in issue: Is respondent the sole owner of the ship? And if this be decided against the libelant, logically and technically, in a forum in which pleadings

are strictly enforced, his case would end. There would be no room for the inquiry into the merits of such a defense. Such a result would conflict with every principle of admiralty administration. Occasionally remarks fall from the bar in the discussion of cases which create an impression that the science of pleading has no place in this court, and that no fixed rules exist by which pleading in admiralty can be tested. It is true that the supreme court of the United States has not pursued the same course with regard to admiralty practice and pleading as it has done, in its equity rule 90, with regard to cases in equity. . We are left to gather these rules from cases and the few text-books on the general subject of admiralty. But the science of pleading controls every court of justice. It not only presents in clear and intelligible form the issues between the parties, but it preserves these issues in the record, so that the controversy can be settled for all time. "Pleading is the science and course of allegation whereby a party in court presents his demand or defense against the demand of the other party, to be made matter of record therein." 1 Bish. Crim. Proc. § 2. In the language of KENT, C. J., in *Bayard* v. *Malcolm*, 1 Johns. 471, "the established principles of pleading, which compose what is called its science, are rational, concise, luminous, and ought, consequently, to be touched very carefully by the hand of innovation." The advantage of an orderly, not to say scientific, system of administration is as apparent in the courts of admiralty; and mischiefs of uncertainty or inexactness are as positive there as in any other tribunals. STORY, J., in *The Boston*, 1 Sum. 328; *McKinlay* v. *Morrish*, 21 How. 343. The pleadings in admiralty, however, are more simple and less technical than in a court of common law. In the former the pleadings are subordinated to the merits of the case, and no cause is allowed to go off or to be decided on technicalities only.

"The technical rules of variance or departure in pleading are disregarded, and the court is never precluded from granting the relief appropriate to the case appearing on the record and prayed for in the libel, because the entire case is not stated in the libel." *Dupont* v. *Vance*, 19 How. 171.

The true office of pleading is to ascertain precisely the points of difference between the parties on the merits of their case. Is there a difference as to the facts of the case? Or, the facts being substantially agreed upon, is there a difference as to the law applicable thereto? The rules of admiralty pleading seek an answer to these questions in the most direct and simple way. Each party, in language of his own choosing, tells his own story as nearly in narrative form as is consistent with brevity and perspicuity, so that his antagonist as well as the court can be in possession of his case. These are respectively what are known as the "libel" or "information," and the "answer." All other methods of pleading in admiralty are intended so to complete these two statements as to reach this result. As is said in the case of *Dupont* v. *Vance*, above quoted:

"The libelant must propound with distinctness the substantial facts on which he relies, pray for the relief appropriate to them, and ask for process. The respondent must answer distinctly each fact stated in the libel, either admitting, denying, or declaring his ignorance of them, and allege all

such other facts as he may rely upon as a defense in whole or in part to the libel."

Amendments as to all matters in form are allowed as of course at any time. And amendments as to matters of substance, even to adding new counts, may be permitted by the court before final decree, on such terms as the court may impose. Rule 24 in admiralty. These principles apply at every stage of pleading in admiralty. The pleading in admiralty consists of the libel or information and the answer. In New York a replication is put in. Ben. Adm. §§ 366, 367, 481. It is seldom used in this court. If the libel does not state clearly and distinctly all the facts of the libelant's case, it can be excepted to, and, if need be, corrected. If it contains all the facts of the case, and these, in the opinion of respondent, do not show any case for relief, it can be excepted to on this ground, and the case can be heard and decided on the exception. If he has a fact which would bar the action, he can set this up as an exception or include it in his answer. But he must take all his exceptions at once. He cannot interpose one, and then another, and yet another, spinning out his defense indefinitely The similar course is pursued with regard to the answer. If it be not complete, it can be excepted to and amended. If it state no defense, this can be tested upon an exception. These exceptions fill the office of demurrers and pleas in the other courts.

Let us apply to this case the broad principles of admiralty pleading. It cannot go off on the narrow and technical issue made, nor will libelant be held to the results of the joinder in issue. Nor in relieving the libelant from this will the respondent be held to his defective plea. The evidence discloses the names of the persons alleged to be the other owners. The issue of fact is, is the respondent the sole owner of the steamship West Cumberland? There is in testimony a certified office copy of the official register of the steam-ship, and also oral evidence to the same effect. The register is kept and recorded, in accordance with the statute of Great Britain, at her home port. This shows that respondent on 5th November, 1887, held the legal title to 18-64ths of the steam-ship, and that other persons at that date owned the other 46-64ths. This establishes the fact that respondent is not sole owner. Can this action be maintained in this court against one co-owner? The action is for breach of a charter-party made between the agents of the owners of the steam-ship and the libelant. In its nature it arises from contract; and the contract binds the owners jointly. It is the rule certainly in the law courts that all the joint contractors must be joined as defendants. Story, Partn. § 455. This is the rule in admiralty also. 2 Conkl. Adm. 23; Betts, Adm. 47; Macl. Shipp. 126; *Patton* v. *Magrath*, Rice, 166; *White* v. *Smith*, 12 Rich. Law, 600; *Mason* v. *Eldred*, 6 Wall. 235.

It seems, however, to be the law now in England that one part owner can be sued alone for breach of contract for the ship's employment by the ship's agents. This is subject to a right to apply to the court or a judge to require plaintiff to join the other owners who are liable as defendants. Carv. Carr. by Sea, 35. This is clearly under some new English stat-

ute changing the law theretofore existing. Id. 36. He quotes R. S. C. 1883, 18. This has no force here. If, indeed, the libelant in bringing his action had charged the owners of the steam-ship, and had alleged that only one of them, to-wit, this respondent, was known to him, and the others were not known to him, he perhaps could sustain his libel. Each part owner is liable *in solido.* Story, Partn. § 455. And Benedict says that when this is the case the mode above suggested can be adopted. Ben. Adm. § 387. But the libel charges the respondent as sole owner. It does not pursue the course suggested by Benedict.

The libelant, however, contends that, even if the respondent is not sole owner, he cannot avail himself of this defense. When the West Cumberland came into this port in December, 1887, her master delivered to the British consul her certificate of registry, dated 20th April, 1879, for entry into the custom-house, and by that certificate the respondent's name alone appeared as owner of the ship. This certificate of registry is a document borne by every British vessel under section 44, Merchant Shipping Act, 1854. It is contended that this estops the respondent from now denying his ownership. Estoppel, as the term is known at the common law, has no place in admiralty. But if a party by his fraudulent act induces another to change his situation, he will not be permitted in any jurisdiction to take advantage of his own fraud. There is no evidence of any act done by this respondent. Nor of any representation made by him, or by his authority, when the charter-party was made. Nor is there any evidence that when the master of the vessel entered his certificate of registry he misled, or intended to mislead, the libelant, or that the position of libelant was in anywise changed to his disadvantage. Besides this, the certificate itself warned every one by a notice upon it that it was not a document of title, and that it does not necessarily contain notice of all changes of ownership.

This action cannot be maintained against the respondent alone. The argument *ab inconvenienti* has been strongly pressed. It is true that, if the rule be insisted upon that all part owners of a vessel be made parties defendant to an action for breach of contract, one never can be safe in suing them. There may be changes incurred from death, bankruptcy, sale, at any hour, unknown either to the master, agent, or party contracting. Rapid as is the transmission of news by cable, such change may occur between the sending and the receipt of a cable message. But this does not leave the contracting party without remedy. If he deal with an agent who signs, as in this case, he can hold him responsible, or he may hold the ship responsible, or he may surrender his choice of his forum, and go to the home of the ship. The exception to the libel is sustained.