**THE NESCO.**

**UNITED STATES v. ST. PAUL FIRE & MARINE INS. CO. et al.**

District Court, S. D. New York.

Feb. 26, 1931.

Robert E. Manley, Acting U. S. Atty., of New York City (Charles E. Wythe, of New York City, of counsel), for exceptions.

Bigham, Englar, Jones & Houston, of New York City (Martin Detels and Gerald E. Dwyer, both of New York City, of counsel), opposed.

WOOLSEY, District Judge.

These exceptions are overruled.

I. The libel in this case is based on general average bonds given by the respondents other than the insurance company and guaranties for the payment of general average given by the insurance company in respect of an alleged loss which occurred in February, 1920.

II. Demurrers or their equivalent, such as the exceptions filed to the answer here, search the pleadings, and I must first look at the libel to see whether it is sound and forms a proper support for the exceptions filed by the libelant to the answer of the respondents. Cheatham v. Wheeling & Lake Erie Ry. Co. (D. C.) 37 F.(2d) 593, 598, 599.

So tested, the libel undoubtedly states a case in general average, though I think that it might have been somewhat more artfully drawn in order, if possible, to limit the issues.

Whilst the libel is adequate as it stands at present, it would have been better if the eighteenth article of the libel had been split into several different articles and if the general average statement had been annexed to the libel, or, if too cumbersome for such annexation, incorporated by reference, with a notice that it was available for inspection by the respondents at the office of the libelant's proctors.

It seems to me that it is better pleading in a general average case for the libelants to

state separately in short articles all the steps leading up to the statement of the general average by the adjusters, including all such allegations as are necessary to establish the statement as a valid statement of general average under the circumstances involved. For when such a complicated situation as a general average claim is so pleaded, it is probable that more admissions would be made by the respondent than when the pleading is as general as it is here, especially in the eighteenth article of the libel.

III. I have done a great deal of work on this matter in order to satisfy myself as to the status of a general average statement as a legal document because it seems to me that the question of its status really lies at the foundation of this case.

If such a statement is considered prima facie proof against cargo owners of the amounts therein claimed due from them, the position of a cargo owner sued in general average would be quite different from his position if the libelant in such a case is still at large on the facts. For in the first alternative the cargo owner would have to justify affirmatively his refusal to pay his contribution, but, in the second place, could put the libelant to his proof.

I am aware that in some cases when fraud or gross mistake has not been shown, McLoon's Adm'r v. Cummings, 73 Pa. 98, the statement of a general average has been dealt with as if it were at least prima facie proof of the liability for contribution of the party against whom the balance is struck. Cf. Cheraw & Salisbury R. Co. v. Broadnax, 109 Pa. 432, 1 A. 228, 58 Am. Rep. 733; Broadnax v. Cheraw & Salisbury R. R., 157 Pa. 140, 142, 145, 27 A. 412. But it is observable that, in most opinions involving this question, there is a saving clause such as, for example, that a general average statement is at most only prima facie proof when cast according to such foreign law and custom as may be applicable. Cf. Thornton v. U. S. Ins. Co., 12 Me. 153, 155; Chamberlain v. Reed, 13 Me. 357, 359, 360, 29 Am. Dec. 506.

Other cases, which are some times cited for the proposition that a general average statement is prima facie evidence that the contributions therein set forth are due from the debited party, are really based on an acquiescence by or some kind of estoppel against the defendant. Cf. Sherwood v. Ruggles, 4 N. Y. Super. Ct. 55; Strong v. New York Firemen Ins. Co., 11 Johns (N. Y.) 323; Loring v. Neptune Ins. Co., 20 Pick. (Mass.) 411.

In the federal courts, apparently from the beginning, in all cases in which the question of the status of a general average statement has been involved, it has been held explicitly, or, at least, it is implicit in the opinions, that the cargo owner is not precluded by the general average statement itself; and that such statement is not prima facie or presumptive evidence against a person claimed thereby to be liable for contribution, but that the facts are all open to inquiry. The Niagara v. Cordes, 21 How. 7, 16, 16 L. Ed. 41; The Alpin (D. C.) 23 F. 815, 819; National Board of Marine Underwriters v. Melchers (D. C.) 45 F. 643, 647; The Santa Anna Maria (D. C.) 49 F. 878, 879; Van Den Toorn v. Leeming et al. (D. C.) 70 F. 251, 253, 258, affirmed 79 F. 107 (C. C. A. 2); Franklin Sugar Ref. Co. v. Funch et al., 73 F. 844 (C. C. A. 3).

After having read all the cases in any way bearing on this question which I have been able to find in the time at my disposal, I think that the status of a general average statement is most clearly and correctly set forth by a decision of a very strong court of great commercial judges, sitting as the Judicial Committee of the Privy Council in the case of Wavertree Sailing Ship Co., Ltd. v. Love, et al., 1897 A. C. 373.

The case was heard by Lord Herschell, Lord Watson, Lord MacNaghten, Lord Shand, Lord Davey, and Sir Richard Couch. Lord Herschell wrote the opinion, in which the Judicial Committee advised the Queen that the judgment of the Supreme Court of New South Wales should be reversed.

The circumstances were that the appellants, the owners of the ship Wavertree, had carried goods on her for several consignees, amongst whom were the respondents, on a voyage from London to Sydney, New South Wales. Whilst the vessel was in the port of Sydney and before the cargo was discharged a fire broke out and expenditures were incurred in extinguishing it, which gave rise to a claim of general average contribution from the cargo owners.

Lord Herschell said at page 379 of 1897 A. C.:

"The controversy between the parties arose in this way. The appellants having employed Messrs. Loftus & Co. of Liverpool to make out a general average statement, that firm sent through Messrs. Dalton Brothers, the ship's agents at Sydney, a circular letter to the several consignees asking for certain particulars which they needed. The respondents thereupon took up the position that the

average bond contemplated the general average being adjusted at Sydney, that in employing average staters at Liverpool the appellants were taking an improper course, and that the respondents were under no obligation to supply particulars for use by those gentlemen.

"It is obvious that there has been a breach of the obligation which the respondents in express terms undertook, unless there was a condition implied in the agreement that the appellants should employ an average stater residing at Sydney to make up a general average statement. The judge in equity held, and the Supreme Court have sustained his view, that there was such an implied condition, and that the respondents had therefore justified their refusal to furnish the necessary particulars.

"Their Lordships are unable to concur in the view taken by the Court below. It was founded upon the provision in the average bond that the particulars were to be furnished in order that the general average charges might be ascertained and adjusted 'in the usual manner,' these words being regarded as requiring that an average stater at Sydney should be employed to prepare the average statement, and as excluding the employment of an average stater residing elsewhere. In their Lordships' opinion this view involves a misconception of the nature and functions of an average statement and of the position of the shipowner and other parties interested in relation to it.

"The profession or calling of an average stater, or average adjuster as it is sometimes called, is of comparatively modern origin. The right to receive and the obligation to make general average contribution existed long before any class of persons devoted themselves as their calling to the preparation of average statements. It was formerly, according to Lord Tenterden, the practice to employ an insurance broker for the purpose. The shipowner was not bound to employ a member of any particular class of persons or indeed to employ any one at all. He might if he pleased make out his own average statement, and he may do the same at the present time if so minded. If he engages the services of an average stater, it is merely as a matter of business convenience on his part. The average stater is not engaged, nor does he act on behalf of any of the other parties concerned, nor does his statement bind them. It is put forward by the shipowner as representing his view of the general average rights and obligations, but the statement or adjustment is open to question in every particular by any of the parties who may be called on to contribute. The average bond entered into in the present case no doubt contemplated that an average stater would be employed, and if not so employed the shipowner could have derived no benefit from the provisions which enable the trustees if they think fit to make advances out of the moneys deposited, and ultimately to distribute them in accordance with the average statement. But the bond imposes no obligation to employ an average stater, and it expressly provides that nothing therein contained should constitute the average adjuster who might be employed an arbitrator or his adjustment or statement a final settlement between the parties to the bond. It is difficult to see, then, whence an obligation on the part of the shipowner to have an average statement prepared by an average adjuster residing at Sydney can be derived, or what right the other parties liable to make general average contribution can have to dictate that the shipowner shall employ an average stater residing at a particular place any more than they have to designate the particular person to be employed. It is true that at most ports where adventures terminate or the interests divide, and no doubt at Sydney, professional average staters of competent skill are to be found, but this is not universally the case. And it is quite conceivable that the ship owner might not be willing to entrust the preparation of the statement to any of the very limited number of average staters who might be found at some of the smaller ports. The most convenient course would doubtless be, in many, perhaps in the majority of cases, to put the matter in the hands of an average adjuster practicing his calling at the port of discharge, but this would not always be so. Many cases may however be suggested where it would be to the advantage of all parties that the services of an average stater elsewhere should be engaged.

"The learned judges in the Court below rested their judgment mainly on the law laid down by Lord Tenterden in the case of Simonds v. White (2 B. & C. 805). 'The shipper of goods,' said the learned judge, 'tacitly if not expressly assents to general average as a known maritime usage which may, according to the events of the voyage, be either beneficial or disadvantageous. And by assenting to general average he must be understood to assent also to its adjustment at the usual and proper place; and to all this it seems to us to be only an obvious consequence to add that he must be understood to

consent also to its adjustment according to the usage and law of the place at which the adjustment is to be made.' The words relied on are that the shippers must be understood to assent to the adjustment of general average 'at the usual and proper place.' In their Lordships' opinion, however, these words do not refer to the preparation of an average statement, but to the actual settlement and adjustment of the general average contribution. The preparation of a general average statement, which does not bind the shipper is not 'the adjustment' of general average. In order to understand Lord Tenterden's language it is necessary to bear in mind what would happen if all parties stood on their rights. The shipowner would hold the goods until he obtained the general average contribution to which they were subject. If the owner of the goods disputed his claim, he would appeal to the tribunals of the country to obtain possession of them on payment of what was due. These tribunals would have to determine whether the owner of the goods was entitled to them and what payment he must make to release them. It would naturally follow, as Lord Tenterden said, that the parties must be understood as consenting to the adjustment according to the law there administered. But all this has, in their Lordships' opinion, nothing to do with the mere employment by the shipowner of an average adjuster to prepare a statement on his behalf. In Lord Tenterden's time, professional average adjusters were not as commonly to be found in the different ports of discharge as they are at present."

This authority, it seems to me, is the most persuasive I have found and wholly satisfies me.

A statement of general average is, legally speaking, therefore, entirely ex parte, although it may be based in part on information furnished to the shipowner by cargo owners as to the nature and value of their goods. It may not be offered as prima facie proof as may be the statement of an auditor appointed by the court in an action at law to examine a long account or complicated facts, and, of course, it has not the effect of arbitration which is a voluntary agreed submission by both parties to a named person or persons. Cf. The Alpin (D. C.) 23 F. 815, 819.

The fact that the shipowner may have employed a general average adjuster as his agent to make up the average statement, accordingly, is merely a question of the shipowner's convenience and does not add to the probative value of the statement. A statement of general average, therefore, although it has a somewhat elaborate background and necessarily is based on a multipartite and complicated calculation, does not rise to any greater legal dignity than does any other statement of account by a shipowner for money claimed to be due from a cargo owner.

It follows that, when suit is brought by a shipowner on a general average statement in which a balance is found due from cargo, the libelant shipowner is still dealing with a claim based on raw facts, and the respondent cargo owner when sued is as much at liberty as to the form of his answer as is any other respondent.

IV. The libel in this case was filed on August 8, 1929, and the answer was filed April 23, 1930.

The misfortune which occasioned the general average occurred, as above mentioned, in February, 1920.

Consequently, it is fair to presume that the respondents had information about the voyage long before the libel was filed, and in the intervening eight months between the filing of the libel and answer, if they had wished to do so, they could have safely framed issues which would be more illuminating to the court than a general denial, for it is to be presumed that any underwriter who refuses to pay a claim of this kind has some theory as to why he is not liable and does not base his refusal merely on an indisposition to pay losses.

In Dupont de Nemours & Co. v. Vance et al., 19 How. 162, 170, at page 171, 15 L. Ed. 584, Mr. Justice Curtis said:

"The rules of pleading in the admiralty are exceedingly simple and free from technical requirements. It is incumbent on the libellant to propound with distinctness the substantive facts on which he relies; to pray, either specially or generally, for the relief appropriate to them; and to ask for such process of the court as is suited to the action, whether in rem or in personam.

"It is incumbent on the respondent to answer distinctly each substantive fact alleged in the libel, either admitting or denying, or declaring his ignorance thereof, and to allege such other facts as he relies upon as a defence, either in part or in whole, to the case made by the libel.

"The proofs of each party must correspond substantially with his allegations, so as to prevent surprise. But there are no technical rules of variance, or departure in

pleading, like those in the common law, nor is the court precluded from granting the relief appropriate to the case appearing on the record, and prayed for by the libel, because that entire case is not distinctly stated in the libel."

See, also, the considered dictum of Mr. Justice Clifford in the case of The Commander-in-chief, 1 Wall. 43, at pages 48 and 49, 17 L. Ed. 609, and Card v. Hines (D. C.) 35 F. 598, 600, 601.

In The Elizabeth Monroe Smith, 258 F. 609, at page 610, Judge Rose, speaking for the Circuit Court of Appeals for the Fourth Circuit, said: "It is but rarely that the admiralty sanctions an answer which tells in substance nothing more than would be the plea of the general issue to a declaration at common law. In marine cases, whether for tort or contract, the witnesses are so likely to be widely scattered, the expense and difficulty of procuring their testimony is often so great, that the parties should be required by their pleadings to make a showing of the facts in their knowledge, so that the issues may be narrowed to the matters really in dispute." I presume there has never been a judge who sat in an admiralty court in this country who does not agree with what Judge Rose there said.

The purpose of pleading is to create issues of fact to be tried, and a trial cannot be really satisfactory unless the issues are clean cut, and so locked that both parties know the points to which to direct their evidence—the zone within which they must be vigilant, and outside which they need not go.

Unless a court is willing without protest to spend many hours listening to unnecessary evidence, or, worse still, reading amorphous depositions, it ought to have, I think, the right to demand a statement from each side in detail as to its respective claims sufficient to enable evidence to be kept within reasonable bounds.

But whilst I am wholly in sympathy with the cases just cited and with the libelant's desire to have issues more clearly narrowed and defined in this case, I cannot aid the libelant in any way unless there is a provision in the Rules of the Supreme Court which requires a more elaborate and detailed answer from the respondents in a case of this kind than the answer which has been filed.

V. The Twenty Sixth Rule of the United States Supreme Court in Admiralty (28 USCA § 723), which is invoked by the libelant in support of its exceptions, provides, so far as here relevant, as follows: "All answers shall be full and explicit and distinct to each separate article and separate allegation in the libel, in the same order as numbered in the libel." A reading of the answer herein shows that it complies with this rule.

In Virginia Home Insurance Co. v. Sundberg (C. C.) 54 F. 389, at page 390, Judge Lacombe said of admiralty pleadings: "Under the rules and practice, I am satisfied that libelant is entitled to an admission or denial of each distinct and separate averment in its libel, separately and distinctly." To the same effect is The Dictator (D. C.) 30 F. 699.

I think the answer in the present case, although it is not as much elaborated as Justice Curtis seemed to indicate was the best practice, complies, not only with the requirements of Rule 26, but also with the decisions in these cases.

I do not see, therefore, what sanction there is which I might invoke to compel the respondents, who have elected to deny allegations of a libel, to elaborate on their denials.

As a general average statement is challengeable at every point, and by their general denials, their denials of knowledge and information sufficient to form a belief, and their denials on information and belief, the respondents have put in issue most of the allegations of the libel in a proper fashion, Oregonian R. Co. v. Oregon R. & Nav. Co. (C. C.) 22 F. 245, 246, 247 (reversed on other grounds, 130 U. S. 1, 9 S. Ct. 409, 32 L. Ed. 837); Neubauer v. American Seating Co. (C. C.) 171 F. 273, 274, 275, and they have answered the libel article by article, as Rule 26 of the United States Supreme Court requires.

The exceptions to the answer must, therefore, be overruled, and the issues be left as much at large as they necessarily are when a libel of this kind is met by such an answer as this.

Thus we are left to have the issues defined, as is usual in admiralty cases, by the briefs of counsel rather than by the pleadings.

Enter order on two days' notice.